UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LISA P. JACKSON, ) <br> ) <br> Defendant. ) | Civil Action No. 09-2089 (ESH) |

**MEMORANDUM OPINION**

Plaintiffs Sierra Club and Valley Watch, Inc., proceeding under the citizen suit provision of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(2), challenge the inaction of the Environmental Protection Agency ("EPA") with respect to the proposed construction of three new major pollution-emitting facilities in Kentucky. Defendant, arguing that the EPA has no mandatory duty to act to prevent the facilities' construction, has moved to dismiss for lack of subject matter jurisdiction. For the reasons set forth herein, the Court concludes that it lacks jurisdiction to review the agency's decision to not act in this case, and it will therefore grant defendant's motion.

**BACKGROUND**

**I.     STATUTORY REGIME**

In furtherance of the CAA's twin goals "to [1] protect and [2] enhance the quality of the Nation's air resources," 42 U.S.C. § 7401(b)(1), the statute establishes two concurrent regulatory

1

schemes: one to enhance air quality in regions that do not meet National Ambient Air Quality Standards ("NAAQS"), *see, e.g.*, *id.* §§ 7407-10, and one to protect air quality in regions that comply with NAAQS – referred to in the CAA as "attainment" areas. *See, e.g.*, *id.* §§ 7470-7479. The EPA establishes and regularly updates the NAAQS for each of a small group of common air pollutants, called criteria pollutants, that includes, *inter alia*, ozone, lead, and carbon monoxide. *Id.* §§ 7408-7409; *see* 40 C.F.R. 50.8, 50.12, 50.15. Each state, in turn, promulgates a State Implementation Plan ("SIP") to set out its means for attaining NAAQS or for protecting air standards in areas that have already attained NAAQS, and it submits its SIP to the EPA for approval. 42 U.S.C. § 7410.

Each state's SIP outlines a permit program to oversee the "modification, construction, and operation of any stationary source" of air pollution. *Id.* § 7410(a)(2)(D). Stationary sources in attainment areas are subject to a higher burden in the permit process, since those regions are subject to the Prevention of Significant Deterioration of Air Quality ("PSD") program. *Id.* §§ 7470-7479. In attainment areas, a PSD permit is required before building any new "major emitting facility," *id.* § 7475(a)(1), which the CAA defines as a stationary source with "the potential to emit two hundred and fifty tons per year or more of any air pollutant." *Id.* § 7479(1).

Section 167 of the CAA charges the EPA Administrator with preventing the installation of major air pollution sources in attainment areas if she finds that the proposed facility would be constructed or operated inconsistently with PSD requirements. 42 U.S.C. § 7477; *see Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 484 (2004). Section 167, titled "Enforcement," reads:

> The Administrator shall, and a State may, take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or

modification of a major emitting facility which does not conform to the requirements
of this part, or which is proposed to be constructed in any area designated pursuant
to section 7407(d) of this title as attainment or unclassifiable and which is not subject
to an implementation plan which meets the requirements of this part.

## II. THE INSTANT ACTION

This action focuses on the EPA's duties under § 167 with respect to the proposed construction of three facilities in Kentucky: East Kentucky Power Cooperative's proposed J.K. Smith Generating Station coal-fired CFB Boiler Project ("Smith"), Conoco Phillips and Peabody's proposed Kentucky NewGas Synthetic Natural Gas Production plant ("NewGas"), and Cash Creek Generation LLC's proposed coal-fired Cash Creek Generating Station ("Cash Creek"). (Compl. ¶ 1.) Both parties agree that each proposed facility, if built, would represent a major emitting facility. (*Id.*; Def.'s Mot. to Dismiss ["Def's Mot."] at 1.) In addition, all three facilities are in counties currently designated as attainment areas. (Compl.¶ 1; Def.'s Mot. at 1.)

Because the proposed installations are major emitting facilities in attainment areas, they are subject to the EPA's enforcement authority under § 167 if they do not comply with CAA requirements. Plaintiffs "do not believe that [Smith, NewGas, and Cash Creek's] operating and construction permits conform with the requirements of the CAA," and therefore, they argue that the facilities trigger § 167's provision for enforcement. (Compl. ¶ 9.) However, as plaintiffs complain, the agency is not acting to prevent the construction of these facilities. (*Id.*)

Reading § 167 as imposing a nondiscretionary duty on the EPA, plaintiffs have sued the EPA Administrator pursuant to the citizen suit provision of the CAA, which allows civil actions for "failure of the Administrator to perform any act or duty under [CAA] which is not discretionary." 42 U.S.C. § 7604(a)(2). Plaintiffs seek declaratory and injunctive relief aimed at compelling the Administrator "to immediately take measures as necessary to prevent

3

construction" of the three facilities in question. (Compl. at 14-15 ¶¶ [A]-[E].) Defendant has moved to dismiss the complaint for lack of jurisdiction, on the ground that under the citizen suit provision, district courts may only hear cases involving "a nondiscretionary, or mandatory, duty" and "cannot dictate *how* the Administrator must act." *Rushing v. Leavitt*, No. 03-CV-1969, 2005 WL 555415, at *3-*5 (D.D.C. Mar. 7, 2005).

## ANALYSIS

I. **GOVERNING PRINCIPLES OF LAW**

The Administrative Procedure Act ("APA") provides a strong presumption favoring judicial review of agency actions, *see, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), to which courts have carved out two exceptions: first, where Congress has expressly precluded judicial review by statute, and second, which is the focus of this case, where the agency action is "'committed to agency discretion by law.'" *NRDC v. SEC*, 606 F.2d 1031, 1043 (D.C. Cir. 1979) (quoting 5 U.S.C. § 701(a)). In the seminal case relating to judicial review of enforcement actions, *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 831.

In *Chaney,* prison inmates who had been sentenced to death petitioned the Food and Drug Administration ("FDA"), alleging that the use of certain drugs for lethal injection violated the Food, Drug and Cosmetic Act ("FDCA"). *Id.* at 823-25. The prison inmates further requested that the FDA take enforcement action in light of these violations, but the FDA refused. *Id.* In finding the FDA's non-enforcement decision to be unreviewable, the Supreme Court explained:

4

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Id.* at 831. Based on these concerns, the Court found that an agency's decision to refuse to bring an enforcement action is unsuitable for review, and therefore, it "should be presumed immune from judicial review" unless the statute "has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832-33.

Applying this test to the FDCA, the *Chaney* Court found no "law to apply," for there were no "meaningful standards for defining the limits of . . . [agency enforcement] discretion." *Id.* at 834. It thus concluded that the FDA's decision not to institute enforcement proceedings was "committed to agency discretion by law" within the meaning of the APA, *id.* at 834-35, and it left "to Congress, and not to the courts, the decision as to whether an agency's refusal to institute proceedings should be judicially reviewable." *Id.* at 838.

To rebut *Chaney*'s presumption and find a nondiscretionary enforcement duty, a court must locate within the statute "guidelines for the agency to follow" and "guidelines for informed judicial review." *Chaney*, 470 U.S. at 833, 836. *See also Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1033 (D.C. Cir. 2007) (requiring "meaningful guidelines defining the limits of [enforcement] discretion" to find a nondiscretionary duty). Statutes can provide these guidelines through, *inter alia*, a requirement "that *all* specified action be taken by a date-certain deadline,"

*Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987), *and* a "meaningful standard" against which to judge whether an agency action satisfies the duty. *E.g.*, *Chaney*, 470 U.S. at 830.

## II. SECTION 167 CONFERS DISCRETIONARY ENFORCEMENT AUTHORITY

In light of *Chaney*'s presumption that statutory enforcement provisions are discretionary, plaintiffs focus on three factors to rebut that presumption so as to allow court review of the Administrator's non-enforcement decision. These factors, each of which must exist in order to find reviewability, are (1) a date-certain deadline by which the agency must act, (2) the existence of a meaningful standard according to which courts can evaluate whether the EPA has satisfied its putative duty, *and* (3) that any conditions precedent set out in § 167 have been meet. Because § 167 does not expressly confer discretion or a duty upon the EPA,[1] the Court must consider each of these three factors as prerequisite to finding judicial reviewability.

As discussed below, while it is arguable that § 167 does provide a date certain, it does not create a meaningful standard for the evaluation of agency decisions. Therefore, the Section does not include "guidelines for informed judicial review." *Chaney*, 470 U.S. at 833, 836. Moreover, there is no evidence that the condition precedent of an agency determination has been met. Absent both a meaningful standard for judicial review and satisfaction of the statute's condition precedent, the Court lacks jurisdiction to review the agency's non-enforcement.

---

[1] The statute's use of the word "shall" does not, on its own, rebut *Chaney*'s presumption against reviewability of agency enforcement decisions. *See, e.g.*, *Chaney*, 470 U.S. at 835 (refusing to afford "shall" a mandatory meaning). As this Court observed in *Wood v. Herman*, 104 F. Supp. 2d 43, 46 (D.D.C. 2000), *aff'd sub nom. Wood v. Dep't of Labor*, 275 F.3d 107 (D.C. Cir. 2001), the mandatory meaning of "shall" "has not been applied in cases involving administrative enforcement decisions." Moreover, whatever support the term "shall" lends to a nondiscretionary duty is, in § 167, undermined by the Section's conditions on the term, first with the phrase "as necessary" and then with a condition precedent that can, itself, only be satisfied by exercise of the agency's discretion. *See infra* Part II.B.

### A. The statute includes a date certain

Defendant argues that § 167's lack of an express deadline for agency action gives the EPA discretion over when to use the powers conferred by the Section. Plaintiff responds that the Section provides a readily-ascertainable deadline that meets the date-certain requirement. Although the Court finds plaintiff's interpretation of the Section to be persuasive,[2] it need not decide the issue because other prerequisites for a mandatory duty have not been satisfied. *See infra* Parts II.B-.C.

### B. The statute lacks a meaningful standard for the Court to apply

Finding a nondiscretionary duty requires a standard by which courts can assess when an agency has satisfied that duty. Defendant argues that no such standard exists in § 167, and therefore, any enforcement duty under § 167 is discretionary in nature. The Court agrees.

For a court to review an agency's decision to use or not use a statutory grant of enforcement authority, the statute must guide the court in determining when the agency has fulfilled its duty. "Enforcement actions are generally within [*Chaney*'s] exclusion, because 'a

---

[2] While a date-certain deadline is necessary to find a nondiscretionary duty, *Sierra Club v. Thomas*, 828 F.2d at 791, the Circuit Court in *Thomas* twice noted the caveat that "a nondiscretionary duty of timeliness may arise even if a deadline is not explicitly set forth in the statute, if it is readily-ascertainable by reference to some other fixed date or event." *Id.* at 790, 791 n.58; *see also Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004). Defendant cautions that the opportunity for courts to ascertain event-triggered deadlines is limited, noting that statutory deadlines using language such as "promptly," *see Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 661 (D.C. Cir. 1975), do not qualify as dates certain for the purpose of establishing an agency's mandatory duty. (Def.'s Mot. at 19.) But even assuming *arguendo* that the D.C. Circuit would reject "promptly" as an agency action deadline notwithstanding its more recent recognition of readily-ascertainable deadlines in *Thomas*, "promptly" does not represent an analog to § 167's more easily discernible timeframe. In ascertaining a specific deadline from "promptly," no one date fits the statute better than any other. By contrast, as plaintiffs argue, it is easy to discern a specific deadline in § 167: the agency can only "prevent the construction or modification" before construction or modification begins, so the commencement of construction or modification triggers the statutory deadline.

7

court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Ass'n of Irritated Residents*, 494 F.3d at 1030 (quoting *Chaney*, 470 U.S. at 830). For example, in *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151 (D.C. Cir. 2006), the D.C. Circuit found that it lacked jurisdiction to review the agency's decision as to whether to prosecute violations of the Mine Act. *Id.* at 154. The statute appeared to require penalties, providing that violators "shall be assessed a civil penalty by the Secretary," 30 U.S.C. § 819 (1976), but it lacked "meaningful standards against which to judge the Secretary's decisions regarding which party to cite" and thus did not make judicial review available under *Chaney*. *Twentymile Coal*, 456 F.3d at 151.

In contrast, the Supreme Court's opinion in *Chaney* provides an "example of statutory language which supplied sufficient standards to rebut the presumption of unreviewability," 470 U.S. at 833, by citing the agency requirement in the Labor-Management Reporting and Disclosure Act ("LMRDA") from its earlier case, *Dunlop v. Bachowski*, 421 U.S. 560 (1975). The statute at issue in *Dunlop* required that upon receiving a union member's complaint, "[t]he Secretary [of Labor] shall investigate such complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he shall . . . bring a civil action." *Chaney*, 470 U.S. at 833 (quoting statute) (ellipses and first alteration in original). The specific action demanded of the Secretary "was not beyond the judicial capacity to supervise." *Id.* (internal quotation marks omitted).

Unlike the LMRDA, the PSD enforcement provision in § 167 does not set out a standard by which courts can judge the agency action, and thus, it does not call upon courts to require action in the first place. Enforcement that involves the broad command "as necessary" is simply

8

"beyond the judicial capacity to supervise." *Chaney*, 470 U.S. at 833. Despite plaintiffs' argument that the Administrator's duty in § 167 is "clearer" than that of the Secretary of Labor in the LMRDA (Pls.' Opp'n at 15), just the opposite is true. A court can more clearly discern and articulate whether one has brought a civil action than whether one has "take[n] such measures . . . as necessary," since the latter represents an amorphous charge that is not as readily susceptible to a yes-or-no answer.

The only arguable standard for judicial review that is found in § 167 is a construction of the clause "as necessary to prevent the construction or modification" as requiring actual prevention. Plaintiffs rely on the Court's decision in *Save the Valley v. Ruckelshaus*, 565 F. Supp. 709, 710 (D.D.C. 1983), to support such a reading. There, the Court found that under § 167 "the Administrator must prevent any construction not specifically presented and approved during the permit process." *Id.* However, *Save the Valley* predates *Chaney*, so it is of limited value in determining whether a meaningful standard exists upon which to find a mandatory duty. Besides, a standard that leaves the agency in derogation of a nondiscretionary duty any time it has not done whatever is *necessary* to prevent a result is not a *meaningful* standard, because what is "necessary" does not become clear until after the fact and varies from case to case. That standard would improperly use an *ex post* analysis to define the *ex ante* duty. *Cf. Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1110 (C.D. Cal. 2009) (discussing literature arguing that "duty [under ERISA] be analyzed from an ex ante, rather than purely from an ex post perspective"); *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466, 474-75 (Bankr. E.D.N.Y. 1999) (finding that, to avoid merely "second-guessing" trustee, only an *ex ante* definition of statutory duty is appropriate). The agency here is a regulator, not an insurer, so the Court will not

9

superimpose such an unpredictable standard onto the statute.

Applying a more reasonable, *ex ante* definition of what action is "necessary" leaves the determination of the duty's boundaries squarely within the agency's discretion. The agency, after all, is in the best position to decide, *ex ante*, the level of enforcement necessary to prevent construction or modification in violation of the PSD program. In other words:

> [T]he language of the statute itself provides that [the agency defendant] must only take such action as is deemed 'necessary' . . . . As a determination of what is 'necessary' in any given situation is an inherently varied and speculative inquiry, which may vary from any one person to another, the Court must find that this statute is, indeed, discretionary in nature.

*Sanchez v. United States*, No. 09-CV-1260, 2010 WL 1626118, at *12 (D.P.R. Mar. 31, 2010) (examining 10 U.S.C. § 2705(a) with respect to Secretary of Defense's alleged failure to promptly notify environmental authorities of environmental and health threats resulting from naval operations, where statute charged, "[t]he Secretary . . . shall take such actions as necessary" to notify environmental authorities). *See also Rushing v. Leavitt*, 2005 WL 555415, at *6 n.12 (finding that "plain text" of 40 C.F.R. § 56.4 did not create a mandatory duty by providing that EPA Administrator "shall include, as necessary" with agency regulations mechanisms for fair and uniform implementation).

The facts of this case highlight why a meaningful standard for judicial review is necessary. Even if the Court were to find that the EPA has a nondiscretionary duty and has not acted upon it, the crux of plaintiffs' prayer for relief would still be out of reach, because the Court has insufficient statutory guidance with respect to what action or class of actions to order the Administrator to take. To be sure, § 167 offers two examples of measures the Administrator *might* find necessary to prevent construction or modification: agency orders and judicial

injunctions. *See* 42 U.S.C. § 7477. Yet, without any more specific guidelines as to *when* and *how* to enforce the statute, the Section is "'framed in the permissive'" because it does not "give any indication that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another." *Ass'n of Irritated Residents*, 494 F.3d at 1033 (quoting *Chaney*, 470 U.S. at 835); s*ee also Friends of the Earth v. Dep't of Interior*, 478 F. Supp. 2d 11, 26 (D.D.C. 2007) (finding that, for the court to compel action, "the thing to be compelled must be a 'discrete action'" (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004))).

Without a meaningful standard to apply, informed judicial review cannot be effected, and since § 167 lacks such a standard, the Court lacks subject matter jurisdiction.

### C. The statute's condition precedent has not been satisfied

Finally, defendant argues that § 167 is discretionary because it includes a condition precedent of an administrative finding. Plaintiff disputes the presence of a condition precedent by noting that the statute does not explicitly premise enforcement authority on an administrative finding. However, invocation of enforcement authority can require an antecedent determination on the part of the agency even if the statute does not use particular language to establish the condition precedent. Contrary to plaintiffs' argument, the Court is of the view that § 167 does include such a condition precedent, and the EPA has not made the administrative finding necessary to vest in the Administrator either the discretion or the duty to take enforcement action.

Statutory grants of enforcement authority commonly condition enforcement on a prior finding, and courts recognize those conditions precedent as a prerequisite to an agency's exercise of its authority. For example, in *Her Majesty the Queen v. EPA*, 912 F.2d 1525, 1533 (D.C. Cir.

1990), the Court found that § 115(a) of the CAA, through its condition precedent of "[w]henever the Administrator . . . has reason to believe that any [United States-based] air pollutant . . . may reasonably be anticipated to endanger public health or welfare in a foreign country," created a layer of agency discretion before the nondiscretionary duty in § 115(a) becomes relevant. "Once that finding is made, however, the remedial action that follows is both specific and mandatory." *Id.*; s*ee also Wood v. Dep't of Labor*, 275 F.3d at 111 ("[T]he Secretary's determination [that a violation has occurred] is a requisite precondition to her enforcement decision."). Where a condition precedent exists in the statute, the relevant authority or duty is only triggered once the condition is satisfied.[3]

In § 167, that condition requires an agency finding of nonconformity with the CAA. Whether the EPA's enforcement role under § 167 is discretionary or obligatory, the Section limits agency action to major emitting facilities that (1) do not comply with CAA requirements or (2) would operate both in an attainment area and without a CAA-compliant SIP regulating it. 42 U.S.C. § 7477. The EPA cannot invoke its § 167 authority to prevent the construction or modification of a CAA-compliant facility that is subject to a CAA-compliant SIP. *See id.* Thus, enforcement under § 167 as to any given facility must be predicated on an EPA finding. Even if the Section were to impose a nondiscretionary duty of enforcement, a finding of nonconformity must precede the duty of enforcement.

---

[3] Analogously, a condition precedent of an administrative finding is required in some situations before an agency action can be considered final for jurisdictional purposes. *See, e.g.*, *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 173 F. Supp. 2d 41, 44 (D.D.C. 2001) (finding that agency action prior to "a precatory finding of 'reason to believe' a violation of law had occurred" was not final (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 234 (1980))), *aff'd*, 324 F.3d 726 (D.C. Cir. 2003).

Plaintiffs argue that certain language must appear in a statute in order for the law to require an administrative finding as a condition precedent. They contrast § 167 with other CAA sections that include the phrase "'whenever the Administrator determines . . .' or similar language," and they suggest that such language "is the sole reason" that other CAA sections confer discretion on the EPA. (Pl.'s Opp'n at 11.) To support this proposition plaintiffs cite *N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 330 (2d Cir. 2003), and interpret that case to conclude that this "key phrase" is the exclusive means for requiring any discretionary finding. (*See* Pls.' Opp'n at 11.) That case, however, does not require any particular talismanic words. In the sentence immediately after the one quoted in plaintiffs' Opposition, the Second Circuit goes on explain how, in *Her Majesty the Queen*, the D.C. Circuit has similarly interpreted different statutory language as "impl[ying] 'a degree of discretion,'" specifically where the phrase "reason to believe" replaces any explicit reference to an administrative determination. *N.Y. Pub. Interest Research Group*, 321 F.3d at 330-31 (quoting *Her Majesty the Queen*, 912 F.2d at 1533). If the discretion embedded in such a condition precedent can be "implied" and does not require magic words, as the Second Circuit suggests, then plaintiffs' reliance on a "missing phrase" to trigger a condition precedent of an agency finding (Pls.' Opp'n at 11) cannot be dispositive.

In this case, the EPA has not made the requisite findings to trigger its § 167 enforcement authority. Although the EPA challenged the conformity of Cash Creek's permit and Kentucky's SIP in respective agency actions,[4] the permit and the SIP have been amended more recently in

---

[4] The EPA's initial objection to Cash Creek's permit and to Kentucky's SIP reflect its good faith effort to enforce the PSD program and prevent both the construction of

response to the EPA's objections, and the EPA has approved the amendments.[5] Without any other agency findings as to noncompliance of the three proposed facilities or Kentucky's SIP, there is no evidence that the condition precedent has been satisfied. Therefore, even if it could be that § 167 imposes a mandatory enforcement duty after the argued condition is satisfied (which it cannot), the EPA still retains discretion over whether to invoke the Section through its capacity to make the requisite administrative determinations.

---

nonconforming facilities in attainment areas and the issuance of nonconforming SIP's. *See also In the Matter of Aspen Power, LLC*, Order (Mar. 4, 2009) (using agency's § 167 enforcement authority to order discontinuation of facility construction). For the EPA's objections to Cash Creek's original permit, see *In the Matter of Cash Creek Generation, LLC*, Order Responding to Issues Raised & Denying in Part & Granting in Part Reqs. for Objection to Permit (Dec. 15, 2009), *available at* http://www.epa.gov/Region7/air/title5/petitiondb/petitions/cashcreek_response2008.pdf. For background on the EPA's initial rejection of Kentucky's SIP and the more recent approval of an amended SIP, see generally Approval and Promulgation of New Implementation Plans: Commonwealth of Kentucky, 75 Fed. Reg. 16,390 (Apr. 1, 2010) (to be codified at 40 C.F.R. pt. 52).

[5] For the final Cash Creek permit, as amended in response to the EPA's original objections, see Permit No. V-09-006, Permit Statement of Basis (Final) (May 3, 2010), *available at* http://www.air.ky.gov/NR/rdonlyres/92CF438A-8FBA-488D-8139-438F7B3EC212/0/V09006Basis_5310.pdf.

## CONCLUSION

For the reasons discussed above, this Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction. A separate Order accompanies this Memorandum Opinion.

/s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date: July 20, 2010